United States Courts
Southern District of Texas
FILED

AUG 1 4 2014

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. 14 CR 0355 |
| | § | |
| TAMNY DENISE WESTBROOKS, | § | |
| a/k/a TAMMY WESTBROOKS, | § | |
| a/k/a TAMMY WESTBROOK | § | |

## INDICTMENT

THE GRAND JURY CHARGES:

### Factual Allegations

1. During the calendar years 2004 through 2010, TAMNY DENISE WESTBROOKS, a/k/a/ TAMMY WESTBROOKS, a/k/a TAMMY WESTBROOK ("Westbrooks"), resided in the Southern District of Texas. From approximately January through April of years 2004 through 2009, Westbrooks worked at JATS Tax Service ("JATS"), a tax preparation business located in Charlotte, North Carolina. Westbrooks was responsible for the daily operations of the business, including preparation of client tax returns and hiring and supervision of several other individuals who worked for JATS.

2. The owner of JATS was T.R., who established the business in approximately 1998. That year, T.R. applied for an electronic filing identification number (EFIN) from the Internal Revenue Service (IRS) to enable the business to file tax returns electronically. The IRS subsequently issued an EFIN to JATS. During the calendar years 2004 through 2009, Westbrooks filed client tax returns with the IRS using this EFIN.

3. T.R. and Westbrooks shared signature authority over JATS's bank account number XXXXXXXXX1689 at Wachovia Bank, into which tax preparation fees were deposited.

For most clients, these fees ranged from $195 to $320 for tax returns prepared and filed for years 2003 through 2008. Pursuant to an agreement between T.R. and Westbrooks, T.R. was paid approximately $25 to $35 for each tax return filed at JATS.

4. Westbrooks's work for JATS was her primary source of income for calendar years 2004 through 2009. Westbrooks classified herself as a subcontractor for JATS, but she did not file or cause to be filed any Forms 1099 with the IRS documenting her non-employee compensation. She reported income from JATS on IRS Schedule C, Profit or Loss from Business. She included a Schedule C for JATS with each of her individual income tax returns on IRS Form 1040 for the calendar years 2004 through 2009.

5. On or about April 8, 2005, Westbrooks filed with the IRS a Form 4868, requesting an extension of time to file her 2004 Form 1040. On the form, Westbrooks falsely and fraudulently estimated that her 2004 tax liability was zero. She did not submit any payment to the IRS with the form. Her tax liability for calendar year 2004 thus became due on April 15, 2005, and the extended due date to file her 2004 Form 1040 was August 15, 2005.

6. On or about July 1, 2005, Westbrooks applied for a $375,000 mortgage loan from Dimension Texas Mortgage, Inc. ("Dimension Mortgage"), a mortgage broker/lending company located in Houston, Texas. The loan was to construct a personal residence in Fulshear, Texas. In connection with the loan, Westbrooks sent and caused to be sent to Dimension Mortgage a false and fraudulent Uniform Residential Loan Application. Westbrooks acknowledged by her signature that any misrepresentations on the application would subject her to civil liability and/or criminal penalties. The loan application falsely and fraudulently stated that Westbrooks had worked at JATS for 17 years, when in fact the business had been established in approximately 1998. On the application, Westbrooks marked "No" in response to the following

2

question: "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?" This response was false and fraudulent because, as Westbrooks well knew, she had an outstanding tax liability to the IRS for the calendar year 2004. In response to questions concerning her income and assets, Westbrooks reported on the loan application that her monthly gross income was $7,200, and she listed JATS's bank account as an asset in the amount of $117,000.

7. On August 15, 2005, Westbrooks failed to file her 2004 Form 1040, despite having earned sufficient gross income during calendar year 2004 to require the filing of a tax return.

8. By letter dated October 31, 2005, IndyMac, Inc. informed Westbrooks that (1) Dimension Mortgage had submitted her loan application to IndyMac to make a credit decision on her prospective loan and (2) IndyMac or one of its affiliates would fund the loan. The next day, IndyMac Bank, F.S.B., a federally chartered savings bank based in Pasadena, California whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC), sent Westbrooks a cover letter and disclosure documents identifying IndyMac Bank, F.S.B. as the entity funding her loan.

9. As part of the loan approval process, IndyMac requested copies of Westbrooks's tax returns for years 2002, 2003, and 2004. On or about November 10, 2005, Westbrooks sent and caused to be sent by facsimile transmission to Dimension Mortgage and IndyMac copies of her purported Forms 1040 for those years. The 2004 Form 1040 sent to IndyMac, which stated that it was signed by her on October 15, 2005, was false and fraudulent because (1) it was not a true copy of her tax return filed with the IRS; (2) the form reported on line 64 that Westbrooks had made estimated payments to the IRS of $13,944, when in fact no such payments had been

3

made; and (3) the form reported on lines 71 and 72a that she had overpaid her tax liability and was entitled to a refund from the IRS of $2,409, when in fact she had incurred a debt to the IRS for her 2004 tax liability.

10. On or about December 30, 2005, Westbrooks signed a false and fraudulent Uniform Residential Loan Application and sent it to Dimension Mortgage and IndyMac Bank, F.S.B. The application was for the same residence as that listed on the July 1, 2005 application, but stated a new loan amount of $384,000. Westbrooks acknowledged by her signature that any misrepresentations would subject her to civil liability and/or criminal penalties. The loan application repeated the false and fraudulent statements on the July 1, 2005 loan application, namely, that Westbrooks had worked at JATS for 17 years and that she was not delinquent or in default on any Federal debt. In fact, JATS had been established in approximately 1998, and Westbrooks remained in debt to the IRS for her 2004 tax liability. The loan application reported that Westbrooks's monthly gross income was $6,387.92, and she listed JATS's bank account as an asset in the amount of $117,000, although the true closing balance of the account on December 30, 2005 was approximately $39,607.

11. On or about October 30, 2006, Westbrooks filed her IRS Form 1040 for the calendar year 2004. Westbrooks signed the form on page two and dated her signature as of October 14, 2005. In contrast to the 2004 Form 1040 submitted to IndyMac, Westbrooks reported no estimated payments on line 64 of her tax return and no overpayment of tax or refund due on lines 71 and 72a. Instead, on line 74, Westbrooks reported that she owed the IRS the amount of $7,367.

12. For each of the calendar years 2004 through 2009, Westbrooks prepared T.R.'s individual income tax returns on IRS Form 1040. Westbrooks included Schedules C for JATS

4

for JATS with each of T.R.'s Forms 1040. The Schedules C prepared by Westbrooks for T.R. reported the following amounts for the years specified below:

| Description | Line | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|
| Gross Receipts or Sales | 1 | $226,500 | $259,716 | $275,158 | $271,750 | $345,395 | $309,108 |
| Car and truck expenses | 9 | ($4,720) | ($8,839) | ($9,031) | ($12,641) | ($7,841) | ($5,919) |
| Wages | Part V | ($201,454) | ($233,834) | ($246,493) | ($245,584) | - | - |
| Sub Contract Misc Expense | Part V | - | - | - | - | ($311,630) | ($288,208) |
| Total expenses | 28 | ($217,599) | ($256,412) | ($268,505) | ($260,935) | ($328,303) | ($307,457) |
| Net profit or (loss) (Line 1 – Line 28) | 31 | $8,901 | $3,304 | $6,653 | $10,815 | $17,092 | $1,651 |

13. Most of JATS's clients requested a refund anticipation loan (RAL) from a bank in connection with the filing of their tax returns. By receiving a RAL, the client received a payment from the issuing bank in an amount representing his or her tax refund from the IRS (if such a refund was due), after payment of tax preparation and bank fees. The issuance of a RAL typically allowed the client to receive payment more quickly than if the taxpayer waited for the IRS to issue a refund check. The IRS refund payable to the taxpayer was then directed to the bank that issued the RAL, instead of the taxpayer client. The JATS bank account received deposits of tax preparation fees from RAL clients in approximately the following total amounts for the years specified below:

| Description | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|
| Tax preparation fees | $160,765 | $259,737 | $268,470 | $265,934 | $340,970 | $334,066 |

In addition, during 2004, tax preparation fees from RAL clients totaling approximately $56,843 were deposited into T.R.'s personal checking account number *********6007.

14. As noted, Westbrooks reported her subcontractor income from JATS on a Schedule C. On her Schedules C, she reported gross receipts or sales from JATS in the same amount as the "Wages" or "Sub Contract Misc Exp" reported on Part V of the Schedules C

5

of T.R. The Schedules C of Westbrooks reported the following amounts for the years specified below:

| Description | Line | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|
| Gross Receipts or Sales | 1 | $201,454 | $233,834 | $246,493 | $245,584 | $311,630 | $288,208 |
| Wages | Part V | ($87,425) | ($124,878) | ($193,426) | ($187,640) | - | - |
| Subcontractor Misc Expens | Part V | - | - | - | - | ($248,400) | ($199,653) |
| Total expenses | 28 | ($148,719) | ($164,520) | ($218,814) | ($217,282) | ($279,657) | ($260,985) |
| Net profit or (loss) (Line 1 – Line 28) | 31 | $52,735 | $69,314 | $27,679 | $28,302 | $31,973 | $27,223 |

15. Westbrooks's Schedules C for the years 2004 through 2009 were materially false and fraudulent and understated Westbrooks's net profit from JATS each year by reporting materially false and fraudulent expenses, particularly "Wages" and "Subcontractor Misc Expens" on Part V of Schedule C. For each of the years 2007, 2008, and 2009, Westbrooks hired fewer than five workers at JATS. Westbrooks did not properly file or cause to be filed on behalf of JATS or herself the required IRS and Social Security Administration forms documenting payment of wages or non-employee compensation to these workers. Westbrooks also paid workers in cash during calendar year 2009 and other years. For each of the calendar years 2004 through 2009, the total amount of wages or compensation paid to JATS workers other than Westbrooks amounted to less than $30,000 per year.

16. On or about February 8, 2007, Westbrooks submitted an Open End Credit Agreement and Personal Loan Application to Smart Financial Credit Union ("SFCU"), an insured State-chartered credit union. The loan application requested an automobile loan in the amount of $12,000. The loan application falsely and fraudulently stated that Westbrooks had been employed at JATS since 1988. The SFCU loan application requested that Westbrooks submit a recent paystub or, if self-employed or retired, her previous two tax returns. On or about February 9, 2007, Westbrooks, knowing that her application might be rejected if she submitted

6

copies of her previous two tax returns filed with the IRS, submitted and caused to be submitted to SFCU false and fraudulent correspondence and payroll statements.

17. The false and fraudulent documents submitted to SFCU on February 9, 2007 included the following: (1) a letter dated February 9, 2007 with JATS's address at the top of the page and purportedly sent from N.R. in "Human Resources"; (2) a purported payroll statement for the period January 10, 2007 through February 9, 2007, with a stated net pay amount of $5,101.54; and (3) a second purported payroll statement for the period December 10, 2008 through January 9, 2007, with a stated net pay amount again of $5,101.54. The documents were false and fraudulent in the following, among other, respects: (1) N.R. did not send the letter, (2) JATS did not have a "Human Resources" department; (3) the letter and payroll statements identified Westbrooks as an employee, when in fact she was a subcontractor; and (4) the payroll statements reported withholdings for federal income tax, Social Security, Medicare, and North Carolina income tax, when in fact no such withholdings were ever made.

18. On September 29, 2009, a grand jury sitting in the United States District Court for the Western District of North Carolina issued a subpoena to Westbrooks as custodian of records for JATS. Westbrooks failed to produce any records by the due date of October 20, 2009. On December 17 and 18, 2009, the district court held a hearing to determine whether Westbrooks should be held in contempt.

19. On December 18, 2009, among other subjects, Westbrooks testified about her Schedules C for 2006 and 2007 and T.R.'s Schedule C for 2006. With regard to Westbrooks's and T.R.'s 2006 Schedules C, Westbrooks testified that the approximately $246,000 reported as wages for T.R. and as gross receipts for Westbrooks represented the amount that "passed through" to Westbrooks as a subcontractor "after [T.R.] had all her expenses." According to

Westbrooks, the supporting documents for the $246,000 amount were the bank records of JATS. In addition, according to Westbrooks, the bank records of JATS were the supporting documents for (1) the approximately $193,000 in wages and approximately $218,000 in total expenses that Westbrooks reported on her 2006 Schedule C and (2) the approximately $245,000 in gross receipts and $217,000 in total expenses reported on her 2007 Schedule C. Westbrooks was questioned about the large amount of her expenses, $193,000, attributable to wages for 2006. Westbrooks purported to explain this amount by testifying: "Part five, other expenses, is other expenses of wages. Because I live in a different state." Concerning T.R.'s reported Schedule C expenses for 2006 other than wages, Westbrooks falsely testified that she would not know the location of any supporting documents for those expenses, which included T.R.'s purported car and truck expenses of over $9,000. Westbrooks claimed that she lacked such knowledge because she T.R.'s 2006 Form 1040 was not her tax return. In fact, Westbrooks prepared T.R.'s return and was the source of some or all of T.R.'s reported Schedule C expense amounts.

20. Contrary to Westbrooks's testimony, the bank records of JATS did not support the amounts reported on Part V of her Schedules C as "Wages" or "Subcontractor Misc Expens." The bank records of JATS provided support for such expenses only in substantially lesser amounts than those claimed. Moreover, during a significant portion of each of the calendar years 2004 through 2009, Westbrooks did not use the JATS bank account to pay business expenses, but instead used it to pay mortgage lenders, retail vendors, and a professional football team for seat licensing fees.

## COUNT ONE

### 26 U.S.C. Section 7212(a)
### Corruptly Endeavoring to Obstruct and Impede the Internal Revenue Service

21.     The above paragraphs 1 – 5, 7, 11 – 15, and 18 – 20 are re-alleged and incorporated herein.

22.     From in or about January 2004 through in or about October 2010, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,**
**a/k/a TAMMY WESTBROOKS,**
**a/k/a TAMMY WESTBROOK,**

defendant herein, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by the following means, among others:

    a. Filing and causing to be filed false and fraudulent individual income tax returns with the IRS on behalf of herself, T.R., JATS workers, and others for years 2004, 2005, 2006, 2007, 2008, and 2009;

    b. Paying herself compensation, including by means designed to obscure the true amount of such compensation, while failing to maintain business records of the same and failing to file or cause to be filed the required forms with the IRS and the Social Security Administration documenting that compensation;

    c. Hiring and paying workers of JATS while failing to maintain business records of the same and failing to file or cause to be filed the required forms with the IRS and the Social Security Administration documenting payment of wages and non-employee compensation;

    d. Paying workers of JATS and herself in cash; and

9

   e.  Providing false and misleading testimony on December 18, 2009 in connection with the individual income tax returns of T.R. and herself.

In violation of Title 26, United States Code, Section 7212(a).

## COUNT TWO

### 26 U.S.C. Section 7206(1)
### Willfully Filing A Materially False Tax Return

23. The above paragraphs 1 – 5, 7, and 11 – 15 are re-alleged and incorporated herein.

24. On or about August 15, 2008, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,
a/k/a TAMMY WESTBROOKS,
a/k/a TAMMY WESTBROOK,**

defendant herein, did willfully make and subscribe an IRS Form 1040, U.S. Individual Income Tax Return, for the calendar year 2007, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That income tax return, which was filed with the IRS, included a Schedule C for "JATS Tax and Financial Services" reporting total expenses of $217,282 on line 28. As the defendant then and there knew, her true total expenses were substantially less than the amount reported.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THREE

### 26 U.S.C. Section 7206(1)
### Willfully Filing A Materially False Tax Return

25. The above paragraphs 1 – 5, 7, and 11 – 15 are re-alleged and incorporated herein.

26. On or about October 15, 2009, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,**
**a/k/a TAMMY WESTBROOKS,**
**a/k/a TAMMY WESTBROOK,**

defendant herein, did willfully make and subscribe an IRS Form 1040, U.S. Individual Income Tax Return, for the calendar year 2008, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That income tax return, which was filed with the IRS, included a Schedule C for "JATS Tax Services" reporting total expenses of $279,657 on line 28. As the defendant then and there knew, her true total expenses were substantially less than the amount reported.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FOUR

### 26 U.S.C. Section 7206(1)
### Willfully Filing A Materially False Tax Return

27. The above paragraphs 1 – 5, 7, 11 – 15, and 18 – 20 are re-alleged and incorporated herein.

28. On or about October 15, 2010, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,**
**a/k/a TAMMY WESTBROOKS,**
**a/k/a TAMMY WESTBROOK,**

defendant herein, did willfully make and subscribe an IRS Form 1040, U.S. Individual Income Tax Return, for the calendar year 2009, which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. That income tax return, which was filed with the IRS, included a Schedule C for "JATS Tax Services" reporting total expenses of $260,985 on line 28.

As the defendant then and there knew, her true total expenses were substantially less than the amount reported.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FIVE

### 18 U.S.C. Section 1014
### False Statement Upon Application and Loan

29. The above paragraphs 6 – 9 are re-alleged and incorporated herein.

30. On or about November 10, 2005, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,
a/k/a TAMMY WESTBROOKS,
a/k/a TAMMY WESTBROOK,**

defendant herein, did knowingly make and cause to made a false statement and report for the purpose of influencing the action of IndyMac Bank, F.S.B., an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, upon an application and a loan, to wit: the defendant submitted and caused to be submitted to IndyMac, F.S.B. a false IRS Form 1040.

In violation of Title 18, United States Code, Section 1014.

## COUNT SIX

### 18 U.S.C. Section 1014
### False Statement Upon Application and Loan

31. The above paragraphs 6 – 10 are re-alleged and incorporated herein.

32. On or about December 30, 2005, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,
a/k/a TAMMY WESTBROOKS,
a/k/a TAMMY WESTBROOK,**

defendant herein, did knowingly make and cause to made a false statement and report for the purpose of influencing the action of IndyMac Bank, F.S.B., an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, upon an application and a loan, to wit: the defendant submitted and caused to be submitted a false Uniform Residential Loan Application.

In violation of Title 18, United States Code, Section 1014.

## COUNT SEVEN

### 18 U.S.C. Section 1014
### False Statement Upon Application and Loan

33. The above paragraphs 16 and 17 are re-alleged and incorporated herein.

34. On or about February 9, 2007, in the Houston Division of the Southern District of Texas and elsewhere,

**TAMNY DENISE WESTBROOKS,
a/k/a TAMMY WESTBROOKS,
a/k/a TAMMY WESTBROOK,**

defendant herein, did knowingly make and cause to made a false statement and report for the purpose of influencing the action of Smart Financial Credit Union, an insured State-chartered credit union, upon an application and a loan. Namely, the defendant submitted and caused to be submitted to Smart Financial Credit Union the following documents containing false statements and reports: a letter dated February 9, 2007, a payroll statement for the period January 10, 2007

through February 9, 2007, and a payroll statement for the period December 10, 2006 through January 9, 2007.

In violation of Title 18, United States Code, Section 1014.

Original signature on File

_____
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

TAMARA W. ASHFORD
ACTING ASSISTANT ATTORNEY GENERAL, TAX DIVISION
U.S. DEPARTMENT OF JUSTICE

By: *Kevin C. Lombardi* (signature)
Kevin C. Lombardi
Trial Attorney, Tax Division
U.S. Department of Justice